**HOWARD P. FOLEY COMPANY,**
Petitioner/Cross-Respondent/Appellee,

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 639,** Respondent/Cross-Petitioner/Appellant.

No. 85–5635.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 1985.

Decided May 20, 1986.

Eugene Miller, Miller & Sincoff, Seaside, Cal., for petitioner/cross-respondent/appellee.

Gary P. Scholick, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for respondent/cross-petitioner/appellant.

Before WALLACE, ANDERSON, and NORRIS, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

International Brotherhood of Electrical Workers, Local 639 (the Union) appeals the decision of the district court which granted Howard P. Foley Company's (Foley) motion for summary judgment to vacate a portion of an arbitration award and which denied the Union's motion for summary judgment to confirm the arbitration award. Specifically, the district court vacated that portion of the arbitration award which awarded back pay to a terminated employee. We affirm.

## FACTS

This case involves a back pay award given by an arbitrator pursuant to a collective bargaining agreement (CBA) between Foley and the Union. The labor contract relates exclusively to one jobsite located at Diablo Canyon Nuclear Power Plant. The Plant is owned and controlled by Pacific Gas & Electric (PG & E). Access to and from the jobsite is controlled exclusively by PG & E. All employees of Foley are subject to the security requirements of PG & E.

On December 6, 1983, Foley's Project Manager attended a meeting at PG & E's offices and learned that PG & E had just completed a six-month undercover drug investigation. The Project Manager received a list of employees with whom PG & E wished to speak. One name on that list was Edward Thomas. Two PG & E security officers met with Thomas later that same day and, following that meeting, the Project Manager was informed by PG & E security personnel that Thomas was to be removed immediately from PG & E property. Foley had no choice but to comply with PG & E's demand.

Thomas was given a termination notice and final paycheck. Had Thomas returned to the jobsite, he would have been told to leave immediately, or escorted off the jobsite. If he had insisted on returning, he could have been shot. Once barred, he could regain admittance only by obtaining clearance from PG & E.

A grievance was filed under the CBA which alleged that Thomas's separation from employment was without "just cause" and thus in violation of the employment contract. This was later referred to an impartial arbitrator which held that Foley's actions were "not proper under the contract" and that Foley was liable for approximately six months' back wages. Foley moved for vacation of the award and the district court concluded that there was "no causal connection between the breach and the lost earnings," and vacated the award.

## DISCUSSION

The question before this court is whether or not the district court properly vacated the arbitrator's decision and set aside the award when it granted summary judgment in favor of Foley.

■ A trial court's granting of summary judgment is reviewed *de novo*. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983).

■ A basic principle governing court review of an arbitrator's award is the narrowness of the court's role. The scope of review is limited to whether the award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960). To consider whether an award drew its essence from the collective bargaining agreement, the court must ensure that the arbitrator

looked to the words of the contract and to the conduct of the parties. *Edward Hines Lumber Co. v. Lumber & Sawmill Workers*, 764 F.2d 631, 635 (9th Cir.1985); *Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas*, 578 F.2d 250, 251 (9th Cir.1978). Thus, although the "refusal of courts to review the merits of an arbitration award is the proper approach," *Enterprise Wheel*, 363 U.S. at 596, 80 S.Ct. 1360, we must examine the award to determine if it is fundamentally at odds with the CBA because, according to the CBA, the arbitrator here did not have the "authority to disregard or modify plain and unambiguous provisions" of the agreement. (E.R. Exhibit A, p. 31).

■ Generally, the remedy for breach of a collective bargaining agreement is limited to an award of compensatory damages. *Desert Palace v. Local Joint Executive Board of Las Vegas*, 679 F.2d 789, 794 (9th Cir.1982). To be compensatory, there must be a causal relationship between the company's violation of the agreement and the loss claimed by the employee. *Westinghouse Electric Corp., Aerospace Division v. IBEW Local 1805*, 561 F.2d 521, 523–24 (4th Cir.1977), *cert. denied*, 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978). An award that exceeds the monetary loss which an injured party suffered as a result of an agreement breach is considered punitive. *Desert Palace*, 679 F.2d at 794 (citing *Westinghouse*, 561 F.2d at 523–24).

■ The award of damages in the present case does not draw its essence from the CBA, for the agreement's essence does not contemplate punitive, but only compensatory awards. Though not termed punitive, the award here can only be such, for there is nothing in the record showing it validly compensatory. There is no causal connection between the breach and the loss since Thomas, as conceded by the Union and the arbitrator, was barred from the jobsite by PG & E, not Foley, during the time period for which the lost earnings were assessed. Both the arbitrator and Foley were powerless to return Thomas to the jobsite once PG & E ordered him barred. As such, the loss sustained by

Thomas would have occurred whether or not Foley breached the CBA.

In *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), the employer was found to have committed unfair labor practices by reporting to the Immigration and Naturalization Service certain employees known to be undocumented aliens in retaliation for their engaging in union activity. As a result of the unfair labor practices, several employees were deported to Mexico. In computing a backpay award, however, the Court held that "... the employees must be deemed 'unavailable' for work (and the accrual of backpay therefore tolled) during any period when they were not lawfully entitled to be present and employed in the United States." *Sure-Tan*, 467 U.S. at 903, 104 S.Ct. at 2815, 81 L.Ed.2d at 750. Despite the employer's clear culpability, the court determined that the employees' unavailability tolled any backpay award. *Id.*

This court finds the reasoning in *Sure-Tan* persuasive in two ways. First, once barred from the jobsite by PG & E, Thomas could not re-enter. His employment at that jobsite after that point was a legal, as well as contractual, impossibility. As such, he was "unavailable" for work during the period in question and his backpay award therefore tolls.

Second, analogizing to the policy of immigration laws enforcement that superseded the employer's culpability in *Sure-Tan*, this case presents an instance in which the necessity of giving PG & E exclusive control over security at Diablo Canyon supersedes any culpability on Foley's part. Indeed, Foley's culpability was much less than that of the employer in *Sure-Tan* since all parties knew and understood that PG & E, not Foley, controlled access to the jobsite. Under these circumstances, the Union should have negotiated an agreement with Foley that would cover the instant situation, rather than relying on a "just cause" provision concerning a party that had no control over access to the jobsite.

CONCLUSION

In the absence of any provision for punitive awards and of any substantiating proof of willful or wanton conduct, an arbitrator may not make an award of punitive damages for breach of a collective bargaining agreement. *Westinghouse Electric,* 561 F.2d at 524. There being no provision in the CBA here for an award of punitive damages and no allegations of willful or wanton conduct, the arbitrator's award is not sustainable. The judgment vacating it is therefore

AFFIRMED.

NORRIS, Circuit Judge, dissenting:

I dissent because I believe that the arbitrator's award "[drew] its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The basis of the award is that Foley discharged Thomas without questioning PG & E's decision to exclude him from the jobsite as a security risk. The arbitrator could rationally have read into the just cause clause an implied covenant of good faith and fair dealing. Such an interpretation would hardly be novel. *See, e.g., Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 206 Cal.Rptr. 354, 362, 686 P.2d 1158, 1166 (1984) (a covenant of good faith and fair dealing is implied "in *every* contract.") (emphasis in original). It would have been a simple matter for Foley to have tested the strength of PG & E's claim that Thomas was a security risk. For example, Foley could have interviewed Thomas and discussed his side of the story with PG & E. I recognize that Foley may have struck out in any effort to persuade PG & E to lift its ban of Thomas, but that's not the point. The point is that Foley did *nothing* to challenge PG & E's declaration that Thomas was "persona non grata" before firing him. Thus the arbitrator could rationally have concluded that Foley discharged Thomas without just cause.

Moreover, the arbitrator's interpretation of the just cause provision of the contract reflected his familiarity with the common law of the shop. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) ("the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement"). The Union claims, and Foley does not dispute, that in a number of unreported decisions arbitrators have interpreted similar "just cause" provisions as imposing a duty on employers to investigate the charges underlying a sole customer's "persona non grata" determination.

In providing for compulsory arbitration of grievances, Foley bargained for the arbitrator's construction of the agreement. *See United Steelworkers v. Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362. Therefore, so long as " 'the arbitrator's interpretation could, in some rational manner, be derived from the collective bargaining agreement', .... [his] award must be affirmed." *Desert Palace v. Local Joint Executive Board of Las Vegas,* 679 F.2d 789, 792 (9th Cir.1982), *quoting Local 1020, United Brotherhood of Carpenters v. FMC Corp.,* 658 F.2d 1285, 1294 (9th Cir. 1981). For "the courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362.

I would reverse the district court judgment vacating the arbitrator's award for failing to show proper deference to the arbitrator's interpretation of the collective bargaining agreement. *See Sheet Metal Workers International Association Local Union No. 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 744 (9th Cir.1985); *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers International Union,* 412 F.2d 899, 903 (9th Cir.1969).