James W. **BONAR** and Beverly J. Bonar, Plaintiffs–Appellees,

v.

**DEAN WITTER REYNOLDS, INC.,** John S. Mc Nally, Jr., Defendants–Appellants,

Ed **Leavenworth,** Defendant.

No. 87–3270.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1988.

---

Stanley T. Padgett, Marvin E. Barkin, Trenam, Simmons, Kemker, Scharf, Barking, Frye & O'Neil, Tampa, Fla., for defendants-appellants.

Robert Dyer, Duckworth, Allen & Dyer, Orlando, Fla., for plaintiffs-appellees.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Arbitrators of a dispute between the Bonars and Dean Witter Reynolds awarded punitive as well as compensatory damages to the Bonars. Dean Witter claims that the district court abused its discretion in refusing to vacate the award of punitive damages because (1) it was obtained through fraud; (2) the arbitrators lacked authority to award punitive damages; (3) the appellees contractually waived any right they may have had to punitive damages; and (4) the punitive damages award was so irrational as to be an abuse of the arbitrators' discretion. Concluding that the district court abused its discretion in not vacating the award on the ground of fraud, we reverse and remand for a new hearing on the issue of punitive damages.

### I.

In July, 1982, appellees James and Beverly Bonar opened a securities trading account at Dean Witter's Orlando, Florida office with an initial deposit of $16,436.77 in cash. During November of 1982, Ed Leavenworth, the appellees' account executive, stole $4,920 from their account. By the end of November, 1983, due to trading losses and Leavenworth's embezzlement, all of the funds that the appellees had originally deposited into their account had been depleted and they owed Dean Witter a margin balance of $539.99. The margin balance had increased to $547.86 by the end of December, 1983 and to $553.92 by the end of January, 1984. Dean Witter never attempted to collect payment on these margin balances.

On February 22, 1984, Leavenworth deposited funds into the appellees' account to clear the balance due Dean Witter. Then, in July of 1984, Leavenworth stole $15,890.20 from the account of another Dean Witter customer and deposited that money into the appellees' account. The stolen funds appeared on the appellees' monthly statements and were used to purchase stocks that also appeared on the monthly statements.

In September of 1984, Leavenworth left the employ of Dean Witter to work for another investment firm. Apparently satisfied with Leavenworth's service, the appellees closed their account at Dean Witter and opened an account at Leavenworth's

new firm. When they closed their account, Dean Witter delivered to the appellees stocks that had a market value of $11,489.90 after all margin balances had been cleared.

In January of 1985, Dean Witter received an inquiry from a former Leavenworth customer about a transaction in her account. When Dean Witter received a second inquiry later that month, it instituted an audit of every account that Leavenworth had managed. That audit revealed that Leavenworth had embezzled funds from a number of Dean Witter customers. Shortly after Dean Witter discovered the fraud, it contacted the customers whose accounts had been affected, including the appellees, and advised them of the apparent embezzlement of funds from their accounts. In addition, Dean Witter turned over the results of its investigation to the State Attorney for Orange County, Florida, and assisted in the criminal prosecution and ultimate incarceration of Leavenworth.

On August 9, 1985, the appellees filed a complaint and demand for arbitration with the American Arbitration Association alleging violations of various state and federal laws,[1] breach of fiduciary duty, negligence, and gross negligence in the handling of their account. The complaint, seeking compensatory and punitive damages, named as defendants Dean Witter, John McNally, Jr., the branch manager of the Orlando office, and Leavenworth. Leavenworth was never served with process and thus never became a party to the arbitration proceedings.

A three member arbitration panel heard the appellees' case on May 8–9, 1986. At the hearing, Dean Witter and McNally admitted liability for compensatory damages.[2] Because of this admission, the central factual issue for the arbitrators to decide was whether the conduct of Dean Witter and McNally justified the imposition of punitive damages.[3] At the hearing, in addition to the testimony from lay witnesses, the appellees presented the testimony of two expert witnesses to support their claim for punitive damages. The second expert, Thomas E. Nix, testified that he was president and owner of an investment advisory firm, that he graduated from the University of Alabama in 1980 with a bachelor's degree in finance and that in 1981 he attended Columbia University and received a bachelor's degree in accounting. Nix further testified that after his graduation from Columbia he worked for St. Paul in New York as the money manager of a $30 million portfolio and that in the summer of 1985 he received an honorary doctorate in finance from the Technical University of Vienna.

During voir dire, Nix admitted that he was not, and never had been, a licensed securities broker or branch manager of a securities brokerage house. Based on this, Dean Witter requested that Nix not be allowed to testify on the ground that he was "not qualified as an expert to render testimony on the trading in any account." After the panel rejected this request, Nix testified that, in his opinion, the trading in the appellees' account was excessive, and that Dean Witter and McNally had not

1. Count I of the complaint alleged violations of Florida's embezzlement law, Fla.Stat.Ann. Ch. 812 (West 1976 & Supp.1987), and Count II alleged violations of SEC Rule 10b–5 and Fla. Stat.Ann. § 517.301 (West 1972 & Supp.1987).

2. McNally and Dean Witter admitted liability for compensatory damages in the amount of $5,886.77. This figure represents the appellees' original deposit of $16,436.77, less the $11,489.90 value of the stock transferred to appellees when they closed their account, plus interest of 12%.

3. The arbitrators also had to decide the correct measure of compensatory damages, a purely legal issue. The Bonars argued that the correct measure of compensatory damages was the

amount of money that their account would have earned if it had been well managed. Dean Witter maintained that the appellees were entitled only to out of pocket losses, in this case $4,946.87, plus interest. The arbitrators awarded the appellees $4,946.87, increased by the performance of the Dow Jones Industrial Average during the trading period, plus interest through the date of the award. Based on this formula, the final judgment entered by the district court on April 2, 1987 assessed compensatory damages against both McNally and Dean Witter in the amount of $9,007.32. Neither Dean Witter nor McNally challenges this portion of the judgment on appeal. *See infra* note 9.

properly supervised the appellees' account. On June 5, 1986, the arbitrators assessed compensatory damages against both Dean Witter and McNally, and punitive damages of $150,000 against Dean Witter alone. Following the award, Dean Witter applied to the arbitration panel for a reduction in, or the elimination of, the award of punitive damages. The arbitrators denied that application on July 15, 1986.

On July 30, 1986, Dean Witter moved to vacate or modify the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11, (the "Arbitration Act") on the grounds that the arbitrators lacked authority to award punitive damages, that the appellees contractually waived any right to punitive damages, and that the punitive damage award was based upon a manifest disregard of the evidence and was so irrational as to be an abuse of the arbitrators' discretion. Before the district court decided this motion, Dean Witter discovered that the credentials asserted by Nix as a basis for his testimony as an expert witness were completely false. Nix was an engineering student at the University of Alabama and never graduated from that institution. Furthermore, he never attended Columbia University or worked for St. Paul.

Accordingly, on November 20, 1986, Dean Witter filed an amended motion to vacate or modify the arbitration award adding as grounds that the award should be vacated under 9 U.S.C. § 10(a) because it was procured through fraud. At the same time, pursuant to local court rules, Dean Witter filed a motion for leave to file a memorandum in excess of twenty pages, and attached to the motion a copy of its proposed memorandum and documentation supporting its claim that Nix had perjured himself. Shortly thereafter, the appellees filed motions to confirm the arbitration award, to file a memorandum in excess of

twenty pages, and to strike as untimely Dean Witter's amended motion to vacate. In the motion to strike, the appellees admitted that Nix had committed perjury at the arbitration hearing.

By orders dated December 9, 1986, the district court granted appellees' motion to confirm the arbitration award, denied Dean Witter's amended motion to vacate or modify the award, and denied all other motions of both parties. The district court took the above actions by stamping GRANTED or DENIED on the face of the parties' motions. As a result, there is no written order explaining the basis for these decisions. The district court entered a final judgment based on the arbitration award against Dean Witter and McNally on April 2, 1987 and this appeal followed.[4]

## II.

### A.

Before we reach the issue of whether Nix's perjury requires vacating the arbitrators' award under 9 U.S.C. § 10(a), we must consider the appellees' contention that Dean Witter did not timely raise this issue. Section 12 of the Arbitration Act provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." The award in this case was filed on June 5, 1986. Dean Witter's original motion to vacate or modify the award was filed on July 30, 1986, well within the three month period, but only challenged the award on grounds other than fraud. The amended motion to vacate, which raised the fraud issue, was not filed until November 20, 1986.

Thus, the issue is whether an amended motion to vacate an arbitration award, filed outside of the three month period and rais-

---

**4.** The notice of appeal in this case states that Dean Witter and McNally appeal "from the final judgment entered in this action on the 2d day of April, 1987, and from all orders entered by the District Court leading to entry of final judgment." Despite the seemingly broad scope of the notice of appeal, the issues that appellants raise in their brief stem only from the district court's denial of Dean Witter's amended motion to vacate the arbitration award. Their brief addresses neither the denial of Dean Witter's motion to file a longer brief, nor any of the other orders "leading to entry of final judgment." Consequently, these issues are deemed abandoned. *See Rogero v. Noone,* 704 F.2d 518, 520 n. 1 (11th Cir.1983).

ing additional grounds for vacation, is deemed timely if the original motion to vacate was timely. In challenging the amended motion as untimely, the appellees admit that they have found no cases deciding this issue.[5] Nevertheless, they urge, with no support from the legislative history, that "the [Arbitration Act] does not contemplate a procedure where a timely motion to vacate preserves a right to file additional and separately grounded challenges outside of the three month period."

By concentrating only on the provisions of the Arbitration Act, the appellees' argument overlooks the key source for determining any question regarding procedure in the district courts. The Federal Rules of Civil Procedure "govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exception stated in Rule 81." Fed. R.Civ.P. 1. Rule 81 provides that in proceedings under the Arbitration Act, the rules apply only to the extent that matters of procedure are not provided for in the Arbitration Act. Fed.R.Civ.P. 81(a)(3). Since the Arbitration Act provides only that notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered, *see* 9 U.S.C. § 12, and contains no provisions governing amendments to timely motions, the Federal Rules of Civil Procedure apply to this issue.

Proceedings to vacate or confirm an arbitration award are instituted by the filing of a motion in the district court, *see* 9 U.S.C. §§ 9, 12, just as a normal civil action is commenced by filing a complaint in the district court, *see* Fed.R.Civ.P. 3. Thus, although technically called a "motion," the papers filed by a party seeking to confirm or vacate an arbitration award function as the initial pleadings in post-arbitration proceedings in the district court. Consequently, Rule 15, which governs amended and supplemental pleadings in a civil action, should also apply to amended motions to vacate arbitration awards.

■ Rule 15 provides as follows:

**(a) Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

The appellees filed no motion, memorandum, or other paper in the district court that could be construed as a responsive pleading until after Dean Witter filed its amended motion to vacate the arbitration award. Therefore, Dean Witter was entitled to amend its motion when it did without leave of the district court. Rule 15 further provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Fed.R.Civ.P. 15(c). The entire focus of Dean Witter's original, timely motion to vacate was the conduct and result of the arbitration proceedings. The issue of Nix's perjured testimony during those proceedings arose out of the same transaction or occurrence set forth in the original motion to vacate. Thus, under Rule 15, Dean Witter's amended motion to vacate relates back to the date of its original motion to vacate, and is itself a timely motion.[6]

---

**5.** Our research confirms that this is an issue of first impression.

**6.** The appellees also contend that Dean Witter was lax in investigating the validity of Nix's credentials and thus should not be allowed the benefit of an extension of time in which to raise the fraud issue. The record reflects that Dean Witter discovered in July and August of 1986 that Nix had lied about his employment with St. Paul, but did not request and receive records from the University of Alabama and Columbia University until late October of 1986. The appellees suggest that Dean Witter's failure to request the university records earlier, or to file an amended motion to vacate in August of 1986 based on Nix's perjury regarding his employment credentials, reflects an "absence of due diligence."

The appellees' failure to ensure the authenticity of their own expert's credentials surely reflects a more egregious lack of due diligence

### B.

■ Having concluded that Dean Witter's amended motion to vacate the arbitration award was timely, we must now decide whether the district court, in denying the motion, abused its discretion under the Arbitration Act. Section 10 of the Arbitration Act specifies the grounds for vacating an arbitration award and provides as follows:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration award—
>
> (a) Where the award was procured by corruption, fraud, or undue means.

In reviewing cases under § 10(a), courts have relied upon a three part test to determine whether an arbitration award should be vacated for fraud.[7] First, the movant must establish the fraud by clear and convincing evidence. *LaFarge Conseils et Etudes, S.A. v. Kaiser Cement,* 791 F.2d 1334, 1339 (9th Cir.1986); *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1297 (9th Cir.), *cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). Second, the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration. *Karppinen v. Karl Kiefer Machine Co.,* 187 F.2d 32, 35

(2d Cir.1951) (A. Hand, J.); *see also Kaiser Cement,* 791 F.2d at 1339; *Dogherra,* 679 F.2d at 1297. Third, the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration. *Kaiser Cement,* 791 F.2d at 1339; *Dogherra,* 679 F.2d at 1297; *see also Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3d Cir.) (fraud must deprive party of fair hearing), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968); *cf. Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978) (relief from judgment under Fed.R.Civ.P. 60(b)(3) requires showing that perjury prevented losing party from "fully and fairly presenting his case or defense")[8]; *Harre v. A.H. Robins,* 750 F.2d 1501, 1503 (11th Cir.1985) (same). This last element does not require the movant to establish that the result of the proceedings would have been different had the fraud not occurred. *Cf. Wilson v. Thompson,* 638 F.2d 801, 804 (5th Cir.Unit B March 1981) (60(b)(3)).

■ Mindful that we are reviewing the district court's refusal to vacate under the narrow "abuse of discretion" standard, we nevertheless hold that under the above test, Nix's perjury requires vacation of the punitive damages portion of the arbitration award.[9] First, along with its amended mo-

---

than a delay of approximately one month in the course of Dean Witter's in-depth investigation into Nix's background. We refuse to penalize Dean Witter for exercising the thoroughness and caution that appellees themselves did not exercise.

7. There is no doubt that perjury constitutes fraud within the meaning of the Arbitration Act. *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1297 (9th Cir.), *cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982); *cf. Harre v. A.H. Robins,* 750 F.2d 1501, 1503 (11th Cir.1985) (perjury constitutes fraud under Fed.R.Civ.P. 60(b)(3)) (*see infra* note 8).

8. In pertinent part, Rule 60(b) provides as follows:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresenta-

tion, or other misconduct of an adverse party....

The standard for determining whether a party should be relieved of a final judgment under 60(b)(3) is nearly identical to the standard for determining whether an award should be vacated for fraud under § 10(a). *See Harre v. A.H. Robins,* 750 F.2d at 1503. This is not surprising considering that both statutes serve the same function of permitting the reopening of an otherwise final judgment upon a demonstration of fraud in the proceedings, and both counteract the strong policy favoring the finality of awards and judgments. *See Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.) (finality of judgments), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970); *Newark Stereotypers' Union,* 397 F.2d at 598 (finality of arbitration awards). Thus, cases arising under Rule 60(b)(3) are persuasive authority in deciding cases under § 10(a).

9. Although Dean Witter's amended motion requested that the district court vacate the "arbitration award," we are vacating only the award

tion to vacate the award, Dean Witter submitted to the district court clear and convincing evidence of Nix's perjury. Letters from the relevant university officials revealed that, contrary to his testimony, Nix had never graduated from the University of Alabama and had never attended Columbia University. Furthermore, an affidavit from the Human Resources Officer at St. Paul Fire and Marine Insurance Company confirmed that Nix had never worked for either St. Paul or its banking subsidiary. Second, Dean Witter has shown that it could not have discovered Nix's perjury before or during the arbitration hearing. Because the rules of the American Arbitration Association do not provide for a pre-hearing exchange of witness lists, Dean Witter did not know who would testify as appellees' expert witnesses until the time of the hearing. Without a pre-hearing opportunity to thoroughly investigate Nix's credentials, Dean Witter could not have known the extent to which he lied about them at the hearing.[10]

Dean Witter has also demonstrated that Nix's perjury materially related to an issue in the arbitration, thus satisfying its burden under the third prong of the test. As

Dean Witter stressed in its brief, because the appellants admitted liability for compensatory damages, the only factual issue before the arbitrators was whether the appellants' conduct was negligent enough to justify the imposition of punitive damages. In support of the appellees' claim for punitive damages, Nix testified at considerable length about how, in his opinion, Dean Witter had mishandled the appellees' account. For example, Nix testified that compared to the average turnover in a portfolio with objectives similar to the appellees' objectives, the turnover rate he calculated for the appellees' account was "extremely high." In addition, when asked whether he thought the appellees' account had been excessively traded, Nix responded: "Briefly I would have to say that it was not so [sic only] excessive but gross and abusive." Appellees' counsel ended his direct examination by asking Nix for his expert opinion as to whether there had been a disregard for the best interests of the customer. Nix responded:

> Yes, I do. Mr. Leavenworth and Dean Witter were the fiduciaries for the Bonars' account, in my opinion. They had control, they ran the show. Ed Leaven-

of punitive damages, for two reasons. First, the posture of Dean Witter's argument suggests, despite the broad phrasing of its amended motion, that it is challenging only the award of punitive damages, and not the award of compensatory damages. In its brief, Dean Witter stresses that because it admitted liability for compensatory damages, the only factual issue for the arbitrators to decide was whether its conduct warranted the imposition of punitive damages. It further stresses that because Nix's testimony related to the issue of punitive damages, the award should not be allowed to stand. Dean Witter never argues that Nix's testimony affected the arbitrators' decision on compensatory damages. Accordingly, we have construed Dean Witter's motion as requesting only vacation of the award of punitive damages.

Second, even if we did not so construe the amended motion, we would not vacate the award of compensatory damages, as Nix's perjury did not materially relate to that issue. The issue of the correct measure of compensatory damages was a purely legal matter; Nix never purported to be a lawyer, and his testimony had nothing to do with that issue. Thus, in accordance with our authority to vacate only part of an arbitration award, *see Enterprise Wheel & Car Corp. v. United Steelworkers of America,* 269

F.2d 327, 330 (4th Cir.1959), *rev'd in part on other grounds,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Hyman v. Pottberg's Ex'rs,* 101 F.2d 262, 266 (2d Cir.1939), we are vacating only the punitive damages portion of the award.

**10.** Nix had testified as an expert witness for appellees' counsel in at least two other securities fraud arbitration hearings. Most likely anticipating Nix's appearance in this proceeding as well, Dean Witter had obtained a copy of his SEC application for registration as an investment adviser, dated October 25, 1983. This application stated that Nix had obtained a degree in insurance from the University of Alabama, but did not mention any of the other credentials to which he had testified. At the hearing, Dean Witter attempted to impeach Nix by pointing out the dearth of credentials in his SEC application, but Nix claimed that it was not correct and that he had filed an amended application later with the SEC. That Dean Witter had the SEC application only shows that it had a pre-hearing opportunity to run a quick check on Nix's background in case he actually testified at the hearing. It does not demonstrate that Dean Witter could have discovered the enormity of Nix's perjury before the arbitration proceedings.

worth may have been the first mate on the ship, but John McNally was the captain. John McNally may have delegated the responsibility of reviewing the checks, reviewing transactions, the daily blotter, whatever, but ultimately it comes back down to him.

With regard to that you can't dismiss the responsibility involved here. The ultimate responsibility comes back down to the office manager. There was disregard for the customer. They embezzled from them. They embezzled from other people to put money into their account, they churned it. They even went so far as to run an excessive margin balance for three months.

And from all appearances here and from the testimony it would seem that while Mr. McNally did show concern and couldn't understand why it went for ninety days or more, the evidence from my perspective during that timeframe is that Dean Witter didn't care. You wouldn't let a margin balance run for ninety days if you did care.

If Nix had not committed perjury by falsifying his credentials, it is extremely doubtful that he would have been permitted to testify as an expert, and the arbitrators would have heard none of the above testimony.[11] The arbitrators' written award, although brief, reflects the influence of Nix's testimony. Nix was the only expert, and in fact the only witness, who unequivocally pinpointed Dean Witter as the party who "didn't care," and who testified that McNally was less culpable for showing some concern over the state of the appellees' account. The arbitrators' award of punitive damages against Dean Witter, but not against McNally, unquestionably reflects the influence of this testimony. Thus, by establishing the foundation that allowed the panel to hear influential expert testimony on the central issue of negligent supervision, the fraud materially related to an issue in the arbitration.[12]

Our decision in *Harre v. A.H. Robins*, 750 F.2d 1501 (11th Cir.1985) supports this conclusion. In *Harre*, we held that the district court abused its discretion in denying a motion for relief from judgment under Rule 60(b)(3) [13] after the plaintiff demonstrated that a key defense expert had falsified his credentials in order to be permitted to testify on the ultimate issue in the case. The plaintiff's theory in *Harre* was that the Dalkon Shield IUD, manufactured and sold by Robins, allowed bacteria to ascend within the core of its tailstring to

---

**11.** Under Federal Rule of Evidence 702, Nix would not have qualified as an expert witness. However, as arbitrators are not bound by the Federal Rules of Evidence, *see* Section 30, American Arbitration Association Commercial Arbitration Rules, there is a chance, albeit almost nonexistent, that the arbitrators would have allowed Nix to testify as an expert despite his lack of credentials. The slight chance of this happening does not, however, change our decision, because even if Nix had been permitted to testify, his credentials as an expert would have been so weak as to render his opinions meaningless.

**12.** The appellees argue that Nix's testimony was merely cumulative and therefore could not have prejudiced Dean Witter's case. To support this argument, the appellees point out that Paul Landauer, the expert who testified before Nix, also opined that the appellees' account had been excessively traded and negligently supervised. This, however, does not mean that the arbitrators ignored Nix's testimony on the same subject. In fact, given that only two experts testified on the crucial issue of negligent supervision, Nix's testimony was invaluable to the appellees in that it corroborated the testimony of their only other expert witness. Perhaps if Nix's testimony had followed a number of other experts who had all testified that the account had been negligently supervised, we would agree that his testimony was merely cumulative. On these facts, however, the appellees' characterization of Nix's testimony as merely "cumulative" unfairly minimizes its importance in these proceedings.

The appellees also argue that Nix's testimony on negligent supervision "merely reflects the obvious, and the conclusion—unsatisfactory supervision—is something counsel on these facts could argue even in the absence of expert testimony." They argue that testimony from Dean Witter employees, revealing that Dean Witter did not follow its own internal guidelines for safeguarding investors, was enough to support the arbitrators' award of punitive damages. However, what appellees *could* have done is irrelevant; what matters is that they *did* offer Nix's extensive "expert" testimony to buttress testimony of lay witnesses and now must live with the consequences of that decision.

**13.** *See supra* note 8.

the uterus where the bacteria caused infection. Dr. Keith, the defense expert, was initially prohibited from offering his opinion on whether the Dalkon Shield caused the plaintiff's injury because a proper foundation had not been established concerning his experience with the Dalkon Shield. After Dr. Keith testified that he had conducted experiments on the Dalkon Shield tailstring and its role in the transmission of bacteria, he was permitted to testify that, in his opinion, the Dalkon Shield did not contribute to the plaintiff's illness, did not transmit bacteria, and was not unreasonably dangerous for use as an IUD during the time period in question. The plaintiff later discovered that Dr. Keith had never performed the experiments he described. In the face of such egregious perjury, we had no trouble finding that the district court abused its discretion in denying the plaintiff's 60(b)(3) motion. The facts of this case do not warrant a different conclusion. Accordingly, Dean Witter is entitled to a new hearing on the issue of punitive damages before a different panel of arbitrators.[14]

### III.

Dean Witter also argues that the award of punitive damages should be vacated because the arbitrators lacked power under the appellees' customer agreement to award punitive damages, or, alternatively, because the appellees waived any right to punitive damages by executing the customer agreement.[15] We address both of these arguments in order to clarify the scope of the new arbitration panel's authority to award punitive damages.

Because both of Dean Witter's arguments stem from its interpretation of the customer agreement, we begin our analysis by reviewing the relevant portions of that agreement. Paragraph 16 provides as follows:

> Any controversy between [Dean Witter] and the [appellees] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the [appellees] may elect.... Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Section 42 of the American Arbitration Association Commercial Arbitration Rules, incorporated by reference into the agreement once the appellees chose the American Arbitration Association as their forum, provides that "[t]he arbitrator may grant any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties." Finally, paragraph 17 of the customer agreement provides that "[t]his agreement and its enforcement shall be governed by the laws of the State of New York...."

Without paragraph 17, the appellees' customer agreement, by incorporating Rule 42 of the Arbitration Rules, authorized the arbitrators to award punitive damages. *See Willoughby Roofing & Supply Co., Inc. v. Kajima International, Inc.,* 598 F.Supp. 353, 358 & n. 11 (N.D.Ala.1984) (incorporation by reference of similar arbitration rule in similar contract authorized

---

**14.** The appellees argue that if this court reverses the judgment and vacates the arbitration award, the matter should be remanded to the original panel of arbitrators, who should then state the weight given to Nix's testimony, and whether they would have made the same award in the absence of that testimony. Although we are authorized to remand to the original panel, *see* 9 U.S.C. § 10(e), we are not required to do so, *see Electronics Corp. of America v. Int'l Union of Electrical, Radio & Machine Workers, Local 272,*

492 F.2d 1255, 1257 (1st Cir.1974). In a case such as this, where the perjury of an expert witness has so tainted the proceedings, we agree with Dean Witter that it would be difficult for the arbitrators now to determine the importance or weight given to Nix's testimony.

**15.** Section 10(d) of the Arbitration Act authorizes vacation of an arbitration award "where the arbitrators exceeded their powers."

punitive damages), *affirmed*, 776 F.2d 269 (11th Cir.1985). New York law, however, prohibits arbitrators from awarding punitive damages. *See Garrity v. Lyle Stuart*, 40 N.Y.2d 354, 353 N.E.2d 793, 795, 386 N.Y.S.2d 831 (1976). Thus, in order to decide whether the appellees' customer agreement prohibits arbitrators from awarding punitive damages, we must determine whether the addition of paragraph 17 to the agreement means that an award of punitive damages is no longer "within the scope of the agreement of the parties." We hold that under *Willoughby*, paragraph 17 does not have this effect on the agreement.

 After finding that a contract nearly identical to the appellees' customer agreement authorized an arbitration panel to award punitive damages, the court in *Willoughby* rejected the defendant's argument that public policy prohibited the parties from vesting arbitrators with the authority to award punitive damages. In so doing, the court indicated that a choice of law provision in a contract subject to the Arbitration Act does not, by itself, prevent arbitrators from awarding punitive damages. Although the contract in *Willoughby* provided that Alabama law governed the agreement, the court held that "even if Alabama law and policy were deemed consistent with that of New York," the choice of law provision would not prevent the arbitrators from awarding punitive damages. 598 F.Supp. at 359. According to the *Willoughby* court, *Garrity* dealt only with the powers of arbitrators under state law and state public policy, and has no application in cases arising under the Arbitration Act. *Id.* Thus, a choice of law provision in a contract governed by the Arbitration Act merely designates the substantive law that the arbitrators must apply in determining whether the conduct of the parties warrants an award of punitive damages; it does not deprive the arbitrators of their authority to award punitive damages. 598 F.Supp. at 359.

In effect, *Willoughby* announced a rule of construction for contracts that, on the one hand, authorize punitive damages in arbitration and, on the other hand, call that authority into question with a choice of law provision. *Willoughby* tells us that in light of the federal policy that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983), we must give precedence to the contract provisions allowing punitive damages.[16]

Because we affirmed the judgment in *Willoughby* on the basis of the district court's opinion, 776 F.2d 269 (11th Cir. 1985), it is now the law of this circuit. Accordingly, Dean Witter's argument that the arbitrators did not have the authority to award punitive damages must fail. Without the choice of law provision, the appellees' customer agreement, like the contract in *Willoughby*, authorized the arbitrators to award punitive damages. Furthermore, because the customer agreement evidenced a transaction in interstate commerce, it is governed by the Federal Arbitration Act. *See* 9 U.S.C. § 2. Under the rule of construction announced in *Willoughby*, the addition of the choice of law provision does not deprive the arbitrators of their power to award punitive damages. Upon remand, the new panel of arbitrators is free to award punitive damages if it finds that the facts warrant such an award.

 We also reject Dean Witter's argument that even if the arbitrators had the power to award punitive damages, the appellees waived their right to punitive damages by signing the customer agreement. According to its accepted definition, a waiver is a voluntary and intentional relinquishment of a known right. *Guaranty Nat'l Ins. Co. v. Pachivas*, 458 So.2d 306, 307 (Fla.Dist.Ct.App.1984); *Wilds v. Permenter*, 228 So.2d 408, 410 (Fla.Dist.Ct.App. 1969); *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 436 N.E.2d 1265, 1269–70, 451 N.Y.S.2d 663,

---

**16.** Of course, the Arbitration Act would not override a clear provision in a contract prohibit-

ing arbitrators from awarding punitive damages. *Willoughby*, 598 F.Supp. at 364.

668 (1982); *City of New York v. State*, 40 N.Y.2d 659, 357 N.E.2d 988, 995, 389 N.Y. S.2d 332, 340 (1976).[17] As our previous discussion demonstrates, the customer agreement was far from a model of clarity on the subject of punitive damages. Paragraph 16, incorporating by reference the rules of the American Arbitration Association, allowed the arbitrators to "grant any remedy or relief which [they] deem[ed] just and equitable and within the scope of the agreement of the parties." Paragraph 17 provided that New York law would govern the agreement and its enforcement. The agreement never explicitly mentioned punitive damages. Simply by signing such an ambiguous agreement, the appellees could not have intended to relinquish their right to punitive damages. *See Starkenstein v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 572 F.Supp. 189, 191–92 (M.D.Fla. 1983); *Willoughby*, 598 F.Supp. at 363. Dean Witter's argument ignores the definition of waiver.[18]

Dean Witter's final argument is that on the basis of the record, the punitive damages award was so irrational as to be an abuse of the arbitrators' discretion. Because we are remanding the issue of punitive damages for a new hearing, where a new record will be developed, we decline to decide the irrationality issue at this point.

### IV.

The portion of the district court's final judgment confirming the award of punitive damages against Dean Witter is REVERSED; the issue of punitive damages is REMANDED for a new hearing before a different panel of arbitrators. The portion of the district court's judgment confirming the award of compensatory damages against Dean Witter and McNally is AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

I agree that under circuit precedent the arbitrator in this case is not precluded from awarding punitive damages. *See Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.*, 598 F.Supp. 353 (N.D.Ala.1984), *aff'd on the basis of the district court's opinion*, 776 F.2d 269 (11th Cir.1985). I write separately to air my reservations about the wisdom of that precedent.

As the court notes, the Bonars' customer agreement incorporates by reference the rules of the American Arbitration Association. Section 42 of those rules provides that "[t]he arbitrator may grant any remedy or relief which he deems just and equitable *and within the scope of the agreement of the parties*." (Emphasis added). I can understand how, in an appropriate case, an arbitrator may find that an award of punitive damages would be "just and equitable." I have difficulty, however, understanding how punitive damages can ever be considered "within the scope of the agreement of the parties" absent some express provision in the contract.

In voicing this view, I do not mean to impugn the ability of arbitrators to fashion appropriate remedies. Nor do I mean to give short shrift to the federal policy favoring arbitration. I mean only to suggest that when parties contractually agree to submit contract disputes to arbitration, they do no more than simply that: they agree to submit *contract disputes* to arbitration. In other words, the arbitration

---

**17.** Although not addressed by either side, there is an issue as to which state's law, New York's or Florida's, would apply to determine if there had been a waiver of punitive damages. We need not decide the choice of law issue, however, because both states have the same standard for waiver, and, under that standard, the appellees did not waive their right to punitive damages.

**18.** The cases that Dean Witter cited in its brief to support the waiver argument are unpersuasive, either because they do not directly face the issue of a waiver of punitive damages, *see Rush*

*v. Oppenheimer & Co.*, 779 F.2d 885, 890 (2d Cir.1985), or because they do not analyze the waiver issue in light of the accepted definition of a waiver as an intentional relinquishment of a known right, *see Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984); *Surman v. Merrill, Lynch, Pierce, Fenner & Smith*, 733 F.2d 59, 63 (8th Cir.1984); *Shahmirzadi v. Smith Barney, Harris Upham & Co.*, 636 F.Supp. 49, 56 (D.D.C.1985); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 543 (N.D.Ill.1981).

clause in a contract is inserted with the understanding that the arbitrator's remedial power will be limited to fashioning relief that is fairly included within the scope of the parties' agreement. That scope may of course encompass a variety of "make whole" remedies which, when correctly applied, serve to uphold the economic bargain the parties struck upon entering into the contract. Whether that scope can fairly be said to encompass the assessment of a penalty for willful or wanton misconduct, however, is extremely doubtful. Punitive damages are designed to serve the societal functions of punishment and deterrence; unlike contract remedies, they are not designed to vindicate the parties' contractual bargain. Consequently, absent an express provision in the contract, punitive damages should be considered as outside the scope of the parties' agreement and beyond the power of the arbitrator to award.

The rules of the American Arbitration Association recognize this important distinction by providing that arbitrators may award only those remedies that are "within the scope of the agreement of the parties." Applying this principle, courts outside this circuit have held that arbitrators lack power to award punitive damages absent an express provision in the contract. *See, e.g., Howard P. Foley Co. v. International Bhd. of Elec. Workers, Local 639,* 789 F.2d 1421, 1424 (9th Cir.1986); *Internatinal Ass'n of Heat & Frost Insulators & Asbestos Workers, Local 34 v. General Pipe Covering, Inc.,* 792 F.2d 96, 100 (8th Cir. 1986); *Baltimore Regional Joint Bd. v. Webster Clothes, Inc.,* 596 F.2d 95, 98 (4th Cir.1979). I believe that our circuit's adherence to a different rule reflects a basic misunderstanding of the nature of punitive damages and the scope of arbitrators' remedial powers.