1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PONTIAC TRAIL MEDICAL CLINIC, P.C., Plaintiff-Appellant,
v.
PAINEWEBBER, INC. and Michael Alioto, Defendants-Appellees.
 No. 9201972.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1993.
 
 Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Pontiac Trail Medical Clinic (Pontiac Trail) appeals from the order of the district court affirming an arbitration award in favor of PaineWebber and Michael Alioto in an action based on allegedly unauthorized trading. Finding no reversible error, we AFFIRM.
 
 
 2
 * Pontiac Trail asks this court to vacate an arbitration award in favor of PaineWebber and Alioto, pursuant to the Federal Arbitration Act (the Act), 9 U.S.C. Sec. 10 (Supp. IV 1992). The case arises out of a dispute between Pontiac Trail and PaineWebber and Alioto, a former PaineWebber account executive.
 
 
 3
 Pontiac Trail operates a medical clinic and has both a pension plan and a profit sharing plan. Dr. Ronald J. Hurwitz and Dr. Robert M. Landsdorf served as the plans' trustees. Alioto was Pontiac Trail's investment broker, and he was employed by E.F. Hutton & Company until June 1987, when he began working for PaineWebber.
 
 
 4
 While Alioto was employed by E.F. Hutton, Pontiac Trail established four investment accounts: two for the pension plan and two for the profit sharing plan. Alioto recommended that Pontiac Trail become involved in "writing puts"[1] on common stocks. Pontiac Trail agreed with Alioto's recommendation and secured a written commitment from Alioto on E.F. Hutton letterhead to limit its put writing so that its total put exercise obligations would never exceed 20% of the equity in the accounts.
 
 
 5
 Shortly after Alioto stopped working for E.F. Hutton in June 1987, Pontiac Trail transferred two of its accounts, one from each plan, to PaineWebber, where Alioto was then working. The limitation agreement was never re-executed after the accounts were transferred to PaineWebber. In October 1987, the stock market dropped several hundred points. At that time, Pontiac Trail's put exercise obligations totaled approximately 170% of the equity in the investment accounts. Because of its obligations, Pontiac Trail was forced to buy stocks at rates well above the going market price. Against Alioto's advice, Pontiac Trail liquidated all the stocks put to them, sustaining significant losses. In 1989, PaineWebber, Alioto and Pontiac Trail agreed to submit to arbitration, Pontiac Trail's claim that PaineWebber and Alioto were liable to it for violating the agreement that had been made when Alioto worked for E.F. Hutton, subject to the New York Stock Exchange (NYSE) Rules of Arbitration.
 
 
 6
 Prior to the arbitration hearing, Pontiac Trail, pursuant to the NYSE arbitration rules, served on PaineWebber and Alioto two requests for documents and information. PaineWebber and Alioto objected to many of Pontiac Trail's requests on grounds of relevancy. Pontiac Trail then asked the arbitrators to hold a prehearing conference to resolve the discovery disputes. On July 11, 1990, the arbitrators held a hearing at which they heard oral arguments on Pontiac Trail's request for discovery. After deliberating outside the presence of the parties, the arbitrators denied Pontiac Trail's requests.
 
 
 7
 Pursuant to the arbitration agreement, the dispute was heard by a panel of arbitrators on July 12, 1990, August 1, 1990 and August 2, 1990. At the arbitration hearing, Pontiac Trail argued: (1) PaineWebber and Alioto exceeded an express limitation on the amount of put options that were authorized to be sold in the Pontiac Trail accounts at PaineWebber; and, (2) the ultimate percentage of put options that Alioto sold was unsuitable for pension accounts. PaineWebber defended on the grounds that: (1) there was no dollar limitation on the purchases of options on the accounts; (2) the investment strategy used by PaineWebber and Alioto was fully authorized by Hurwitz and Landsdorf, the trustees of the plans; and, (3) by liquidating its account, Pontiac Trail failed to mitigate damages since the value of the stocks in the accounts eventually rebounded. The arbitrators returned an award in favor of PaineWebber and Alioto.
 
 
 8
 On January 7, 1992, Pontiac Trail filed in district court an amended petition to vacate the arbitration award which alleged: (1) the arbitrators improperly failed to hold a prehearing conference or appoint an arbitrator to resolve issues of document production; (2) the arbitration award was procured by corruption, fraud or undue means; and, (3) PaineWebber breached an implied covenant of good faith and fair dealing by its actions in the proceeding. PaineWebber and Alioto filed a joint cross-motion to confirm the arbitration award. On July 6, 1992, the district court denied Pontiac Trail's motion to vacate the arbitration award and granted PaineWebber and Alioto's joint cross-motion to confirm the award. Pontiac Trail then timely appealed to this court.
 
 II
 
 9
 Given the strong federal policy in favor of enforcing arbitration agreements, see, e.g., Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), "the burden of proving an arbitration award should be vacated is very great." Federated Dept. Stores, Inc. v. J.V.B. Indus., Inc., 894 F.2d 862, 866 (6th Cir.1990). As the Supreme Court noted in Moses H. Cone, the Arbitration Act reflects a "statutory policy of rapid and unobstructed enforcement of arbitration agreements." 460 U.S. at 23. Furthermore, courts are generally forbidden to review the merits of an arbitrator's award. Board of County Comm'rs v. L. Robert Kimball and Assoc., 860 F.2d 683, 685 (6th Cir.1988), cert. denied, 494 U.S. 1030 (1990). All doubts as to the validity of an arbitration award must be resolved in favor of the validity of the award. Kansas City Royals Baseball Corp. v. Major League Baseball Players Assoc., 409 F.Supp. 233, 257 (W.D.Mo.1976).
 
 
 10
 The standard of review in arbitration cases is extremely narrow. Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters, 813 F.2d 85, 86 (6th Cir.1987). As we stated in L. Robert Kimball and Assoc.:
 
 
 11
 Courts play only a limited role in reviewing an arbitration decision. "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paper Workers Int'l Union v. Misco, [484 U.S. 29, 36 (1987) ].
 
 
 12
 A court's power to vacate an arbitration award is confined to the four grounds specified in the Act, 9 U.S.C. Sec. 10 (Supp. IV 1992), or if the conduct of the arbitrators constitutes "manifest disregard" of applicable law. National R.R. Passenger Corp. v. Chesapeake and O. Ry., 551 F.2d 136, 141-42 (7th Cir.1977). Pontiac Trail relies on two of the grounds specified in the Act:
 
 
 13
 (a)(1) Where the award was procured by corruption, fraud, or undue means.
 
 
 14
 ....
 
 
 15
 (a)(3) Where the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 
 
 16
 9 U.S.C. Sec. 10(a)(1) and (a)(3) (Supp. IV 1992).
 
 III
 
 17
 Pontiac Trail first contends that the conduct of the arbitrators violated Sec. 10(c) of the Act. Pontiac Trail claims that the arbitrators violated this provision by refusing to grant a prehearing discovery conference to resolve discovery disputes.[2] In so arguing, Pontiac Trail relies on NYSE Rule 619(d)(1),[3] which allows a party or an arbitrator to request a discovery conference. A discovery conference was indeed held on July 11, 1990, when the arbitrators heard oral arguments on Pontiac Trail's discovery requests and denied them.
 
 
 18
 Pontiac Trail claims that the "timing was not such that the July 11 session could be a prehearing conference," because it was held only one day before the commencement of the arbitration hearing on July 12, 1990 and therefore would not have allowed it sufficient time to review documents that might have been obtained as a result of the conference. NYSE Rule 619, however, does not establish a time frame for the prehearing discovery conference. Additionally, Pontiac Trail's contention ignores the fact that the arbitrators could have adjourned the arbitration hearing had they granted Pontiac Trail's request and believed it necessary to provide additional time to review the documents. The arbitrators have also signed uncontroverted affidavits stating that the July 11, 1990 session was, in fact, a prehearing discovery conference.[4]
 
 
 19
 For the foregoing reasons, the district court did not err in holding that no misconduct was committed by the arbitrators regarding the prehearing conference and discovery issues.
 
 IV
 
 20
 Pontiac Trail next contends that the arbitration award should be vacated because PaineWebber obtained the award fraudulently by withholding relevant documents. An arbitration award may be vacated if it was procured by corruption, fraud or undue means. 9 U.S.C. Sec. 10(a)(1). In reviewing claims under Sec. 10(a)(1), courts have relied upon a three-part test to determine whether an arbitration award should be vacated: (1) the plaintiff must establish fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; and, (3) the petitioner must demonstrate that the fraud materially related to an issue in the arbitration. Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir.1988) (citations omitted). Pontiac Trail argues that PaineWebber gave misleading discovery responses and failed to produce numerous documents, later obtained by Pontiac Trail through independent sources, that were responsive to its discovery requests.
 
 
 21
 At a hearing on August 18, 1991, the district court ordered Pontiac Trail to file a statement of undisputed facts pertaining to the fraud claim. In response to the court's order, Pontiac Trail filed a document styled, "Memorandum of Facts Regarding Request for Prehearing Conference." The district court determined that the document consisted of conclusory factual allegations, and that the attached exhibits only tangentially addressed the assertion of fraud and provided no meaningful indication whether the documents PaineWebber failed to produce were in fact requested within the time frame of the request or were applicable to the transactions at issue. Instead, the district court determined that the memorandum and attached exhibits merely demonstrated that PaineWebber objected to the production of many of the documents requested by Pontiac Trail.
 
 
 22
 Further, Pontiac Trail has cited no authority suggesting that allegedly defective objections and misleading discovery responses to prehearing discovery requests can constitute fraud within the meaning of Sec. 10(a)(1) when, as here, the arbitrators declined to order production of the requested documents and sustained PaineWebber's objections to their production. See generally H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1118 (6th Cir.1976) (allegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court); USM Corp. v. SPS Technologies, Inc., 694 F.2d 505, 509 (7th Cir.1982), cert. denied, 462 U.S. 1107 (1983) (failure to voluntarily produce a document during discovery does not necessarily amount to fraud).
 
 
 23
 Moreover, a plaintiff cannot successfully make out a prima facie claim of fraud if the fraud was discoverable upon the exercise of due diligence prior to or during the arbitration. Pontiac Trail has failed to show that it exercised due diligence in attempting to discover the alleged fraud prior to the arbitration. Pontiac Trail admits that the disputed documents were obtained from independent sources, not PaineWebber, and has given no reason why it could not have reasonably obtained them prior to or during the arbitration hearing.
 
 
 24
 In the alternative, Pontiac Trail argues that even if PaineWebber and Alioto did not commit fraud, they did use "undue means" in procuring the arbitration award.[5] Courts have interpreted the "undue means" language of the Act as requiring some type of bad faith behavior by the winning party. Shearson Hayden Stone, Inc. v. Liang, 493 F.Supp. 104, 108 (N.D.Ill.1980) (undue means requires some type of bad faith in the procurement of the award), aff'd, 653 F.2d 310 (7th Cir.1981).
 
 
 25
 The term "undue means" was recently considered by the Ninth Circuit. A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401 (9th Cir.1992), cert. denied, 113 S.Ct. 970 (1993). A.G. Edwards was an appeal of a district court's order vacating a securities arbitration award against McCollough on the ground that the award was procured by undue means. McCollough had persuaded the district court that two of A.G. Edwards' defenses were sufficiently meritless as to constitute undue means. The Ninth Circuit disagreed and reversed. The court noted that the Act requires a showing that the award was procured by "undue means" and applied a three-part test similar to the Bonar fraud test. 835 F.2d at 1383. The court held that "undue means" "clearly connotes behavior that is immoral if not illegal." A.G. Edwards, 967 F.2d at 1403. Significantly, the court held that mere sloppy or overzealous lawyering does not constitute "undue means." Id. The court further noted:
 
 
 26
 Offering a meritless defense, however unfortunate, is part and parcel of the business of litigation; it carries no connotation of wrongfulness or immorality. In addition, it occurs with such frequency that, were the district court's rule to be adopted, the federal courts would be required to overturn arbitration awards regularly as procured by "undue means." This would be inconsistent with the extremely limited scope of judicial review of such awards.
 
 
 27
 Id. at 1404 (footnote omitted). The A.G. Edwards court's reasoning applies with equal force when, as in the present case, the charge of "undue means" is based upon a discovery dispute.
 
 
 28
 We conclude that the district court did not err in finding that Pontiac Trail had not established fraud or undue means by clear and convincing evidence.
 
 V
 
 29
 Pontiac Trail next contends that the arbitration award should be vacated because PaineWebber breached an implied covenant of good faith and fair dealing. The argument lacks merit. In arguing that failure to comply with an implied covenant of good faith and fair dealing is grounds for vacating an arbitration award, Pontiac Trail relies on two cases, Hubbard Chevrolet Co. v. General Motors Corp., 873 F.2d 873, 876 (5th Cir.), cert. denied, 493 U.S. 978 (1989) and Lawyers Title Ins. Corp. v. First Fed. Sav. Bank & Trust Co., 744 F.Supp. 778, 787 (E.D.Mich.1990), both of which are wholly inapposite: neither case addresses, explicitly or implicitly, a petition to vacate an arbitration award. In any event, this claim, in all substantive respects, simply duplicates Pontiac Trail's fraud claim. As detailed above, Pontiac Trail's fraud claim lacks merit on a variety of grounds; most significantly, there is no probative evidence of record that PaineWebber acted in a fraudulent manner. The district court therefore did not err in concluding that PaineWebber did not breach an implied covenant of good faith and fair dealing, assuming there was such a covenant, in its dealings with Pontiac Trail.
 
 VI
 
 30
 Finally, Pontiac Trail claims to be entitled to attorney fees due to PaineWebber's bad faith during the arbitration proceedings. In light of the fact that Pontiac Trail has failed to identify any reason to justify vacating the arbitration award, the claim has no merit. Moreover, the Act, 9 U.S.C. Sec. 10, which controls review of arbitration awards, does not grant a district court the authority to award attorney fees. The district court therefore did not err in refusing to award attorney fees to Pontiac Trail.
 
 VII
 
 31
 Accordingly, the judgment of the district court, affirming the arbitration decision, is AFFIRMED.
 
 
 
 [1]
 A "put option" is the right to sell a given amount of a security at a given price on or before a specified date. Thus, if the put option is exercised, the option writer, here Pontiac Trail, will have to buy stock at the pre-established exercise price, even if the going market price is lower. In return for this unfavorable possibility, the writer will receive a premium from the buyer for issuing the put option
 
 
 [2]
 Pontiac Trail claims that the arbitrators' failure to grant a discovery hearing prevented it from obtaining evidence that would have allowed it to impeach the credibility of Alioto, who testified that Landsdorf and Hurwitz, the trustees of the pension and profit sharing plans, authorized him to obtain put exercise obligations in excess of the 20% limitation
 
 
 [3]
 NYSE Rule 619(d)(1) states, in relevant part:
 Upon the written request of a party, ... a pre-hearing conference shall be scheduled.... The presiding person shall seek to achieve agreement among the parties on any issues that relate to the pre-hearing process or to the hearing, including but not limited to, the exchange of information, exchange or production of documents, identification of witnesses, identification and exchange of hearing documents, stipulations of fact, identification and briefing of contested issues, and any other matter which will expedite the arbitration proceedings.
 
 
 [4]
 Even if the arbitrators failed to hold a prehearing discovery conference within the meaning of NYSE Rule 619(d), this would not enhance our power to vacate the arbitration award. The purpose of a discovery conference is merely to "seek to achieve agreement among the parties." Pontiac Trail has cited no authority suggesting that an arbitrator's failure to "seek to achieve agreement among the parties" rises to the level of misconduct sufficient to warrant vacating an arbitration award pursuant to 9 U.S.C. Sec. 10(a)(3)
 
 
 [5]
 Other than quoting the statutory language, "corruption, fraud, or undue means," Pontiac Trail did not specifically present the "undue means" argument to the district court. That fact may prevent this court from reaching the merits of this argument since we may not address claims that were not first asserted in the district court. See White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir.1990). In any event, as detailed above, the argument is without merit