[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10214

_____

NUVASIVE, INC.,

Plaintiff-Counter Defendant-Appellee,

*versus*

ABSOLUTE MEDICAL, LLC,
GREG SOUFLERIS,
DAVE HAWLEY,
ABSOLUTE MEDICAL SYSTEMS, LLC,
RYAN MILLER,

Defendants-Appellants,

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:17-cv-02206-CEM-GJK

_____

Before WILSON and JILL PRYOR, Circuit Judges, and RUIZ,[*]
District Judge.

JILL PRYOR, Circuit Judge:

NuVasive, Inc. manufactures medical products and equipment to treat spinal disease. In central Florida, NuVasive sold its products through an exclusive distribution agreement with Absolute Medical, LLC, a company owned by Greg Soufleris. Under the agreement, Absolute Medical employed independent-contractor sales representatives who marketed and sold NuVasive's products to doctors and medical practices in the region. Long before the end of the agreement's term, Soufleris informed NuVasive that he was dissolving Absolute Medical and ending its business relationship with NuVasive. He started a new company, Absolute Medical Systems, LLC ("AMS"), which began selling products for one of NuVasive's competitors.

NuVasive sued Absolute Medical, Soufleris, AMS, and two of Absolute Medical's sales representatives who began working for AMS, Dave Hawley and Ryan Miller, for breaching the exclusive

_____

[*] Honorable Rodolfo A. Ruiz II, United States District Judge for the Southern District of Florida, sitting by designation.

distribution agreement and the included noncompetition agreements. After two years of litigation, the district court enforced a dispute resolution clause in the agreement, ordering NuVasive and Absolute Medical to arbitrate NuVasive's breach-of-contract claim seeking money damages. The district court stayed most of the other claims during the arbitration. The arbitration panel's final award found Absolute Medical liable for breaching the agreement but denied NuVasive's claims for lost profits damages.

Following arbitration, the litigation resumed to resolve NuVasive's remaining claims.[1] In discovery, Absolute Medical produced text messages that Soufleris had sent to Hawley while Hawley testified before the arbitration panel. The text messages concerned the subject matter of Hawley's testimony, and his testimony on cross-examination appeared to be consistent with answers suggested in Soufleris's contemporaneous texts. Based on this new information, NuVasive moved the district court to vacate the arbitration panel's award under 9 U.S.C. § 10(a)(1) on the ground that the award had been procured by fraud. Absolute Medical objected that NuVasive filed the motion to vacate after the

---

[1] While the arbitration was pending, NuVasive moved for summary judgment on its breach-of-contract claim against Absolute Medical that sought injunctive relief (Count I), the breach-of-contract claim against AMS (Count III), and the breach-of-contract claim against Hawley and Miller (Count IV). Hawley, Miller, and AMS moved for summary judgment on the breach-of-contract claim against Hawley and Miller and the conversion claim against Hawley and AMS (Count V).

statutory three-month deadline, but the district court tolled the deadline and ultimately vacated the arbitration panel's award.

Absolute Medical, Soufleris, AMS, and the sales representatives now appeal the district court's order granting NuVasive's motion to vacate the arbitration panel's final award. After careful review, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

### A.    NuVasive and Absolute Medical's Business Relationship

NuVasive is a medical device manufacturer that designs, develops, and markets products for the surgical treatment of spinal disorders. Absolute Medical, owned by Soufleris, employed independent contractors to act as sales representatives to market and sell NuVasive's products to hospitals and doctors.

Around 2005, Absolute Medical began working with NuVasive to market and sell NuVasive's products in central Florida. By 2013, NuVasive and Absolute Medical had entered into an exclusive distribution arrangement in which Absolute Medical and its sales representatives would be the sole marketers, distributors, and sellers of NuVasive's products in a defined territory in Florida that included specific counties as well as certain hospitals in other counties.

This appeal concerns the contract NuVasive and Absolute Medical inked in 2017, when they agreed to extend their exclusive distribution relationship "after many months of negotiation[]."

Doc. 1 at 4.[2] This contract, entitled "Exclusive Sales Representative Agreement" (the "Agreement"), had a term of five years beginning on January 1, 2017. Like the earlier agreement, it appointed Absolute Medical and its sales representatives as the exclusive sellers of NuVasive's products in the defined territory. In section 5.09(c) of the Agreement, Absolute Medical promised that during the Agreement's five-year term and for one year afterward, Absolute Medical's sales representatives would not "represent, promote, sell, solicit, or otherwise commercialize . . . any products or services that [we]re, in NuVasive's reasonable judgment, competitive with any of NuVasive's products or services." Doc. 260-3 at 137. Absolute Medical further agreed that, during the same period, its sales representatives would not "solicit, encourage, or induce, or cause to be solicited, encouraged or induced" any current, former, or prospective NuVasive customers "to terminate or adversely modify any business relationship with NuVasive." *Id.* In exchange, NuVasive agreed to provide Absolute Medical's sales representatives with "extraordinary, specialized, comprehensive, and industry-leading training" on NuVasive's products, which would give the sales representatives "a deep understanding of NuVasive's products, methodology, trade secrets, and other valuable confidential or proprietary information." Doc. 188 ¶ 30.

To effect section 5.09(c)'s non-competition and non-solicitation provisions, section 5.09(e) of the Agreement required Absolute

---

[2] "Doc." refers to the docket entries in No. 6:17-cv-02206 (M.D. Fla.).

Medical to cause each of its "Representative Affiliate[s]"—in Absolute Medical's case, its sales representatives—to sign compliance agreements. The compliance agreements incorporated section 5.09(c) of the Agreement. To comply with section 5.09(e), Absolute Medical agreed to have its sales representatives, including Hawley and Miller, sign compliance agreements.

Less than one year into the Agreement's five-year term, Soufleris informed NuVasive by email of his "resignation" from the Agreement because "[his] time [had] come to move on." Doc. 188-4. Just three days later, Soufleris formed AMS. After a week, the Absolute Medical sales representatives who sold NuVasive products resigned. According to NuVasive, the sales representatives then began working for AMS soliciting business from, and performing services for, the same customers they serviced for NuVasive, but on behalf of a different manufacturer, Alphatec, which produced competing products. NuVasive believed that with this conduct, Absolute Medical was violating the Agreement by not enforcing the compliance agreements that it was supposed to have had the representatives sign, and that the sales representatives were violating the compliance agreements by working for Alphatec through AMS.

## B.    NuVasive's Lawsuit

NuVasive filed a federal lawsuit against Absolute Medical, Soufleris, Hawley, Miller, and AMS.[3] NuVasive's complaint alleged nine counts against the various defendants: (I) breach of contract against Absolute Medical seeking injunctive relief; (II) breach of contract against Absolute Medical seeking damages through an arbitration proceeding; (III) breach of contract for injunctive relief and damages against AMS; (IV) breach of contract for injunctive relief and damages against Hawley and Miller; (V) conversion against Hawley and AMS for sharing a NuVasive product with competitor Alphatec; (VI) breach of fiduciary duty of loyalty against Soufleris under Florida's Limited Liability Company Act; (VII) piercing the corporate veil to hold Soufleris liable for actions of Absolute Medical and AMS; (VIII) violation of the Florida Deceptive and Unfair Trade Practices Act against all defendants; and (IX) tortious interference with contract against Soufleris for interference with NuVasive's relationship with surgeon customers.

The operative complaint alleged the following. Absolute Medical's sales representatives—including Hawley and Miller—were "soliciting business from, and performing services for, the same customers they solicited business and performed services on NuVasive's behalf." Doc. 188 ¶ 54. "The only difference" was that they had started "sell[ing] products marketed by Alphatec on behalf

---

[3] The initial complaint named as defendants Absolute Medical, Soufleris, and Hawley. The first amended complaint added as defendants AMS and Miller. NuVasive's second amended complaint is the operative pleading.

of AMS." *Id.* Less than a week after AMS was formed, Soufleris and Miller dined with one of Absolute Medical's surgeon customers who had previously purchased NuVasive products and asked the surgeon to try Alphatec's products. During the same month, Hawley sent a message to Alphatec "regarding custom instruments needed by a surgeon" to whom he had previously sold NuVasive products. *Id.* ¶ 6. The email provided precise descriptions of the instruments. Hawley also promised to send samples of the custom instruments NuVasive had made for the surgeon so that Alphatec could create similar ones. NuVasive later discovered, in a Florida hospital, custom instruments NuVasive had made for the surgeon, which were sterilized and prepared for a surgery involving non-NuVasive products, without NuVasive's knowledge. Soufleris, Hawley, and Miller continued to use the same telephone numbers and work email addresses that they had used while working with Absolute Medical to sell NuVasive products—even though they purported to work for AMS, a different company.

## C.    Litigation Stayed for Arbitration of NuVasive's Breach-of-Contract Damages Claim Against Absolute Medical

NuVasive's breach-of-contract claim seeking damages against Absolute Medical (Count II) alleged that Absolute Medical breached the Agreement by attempting to terminate the agreement, failing to enforce its sales representatives' compliance agreements, falsely representing that its sales representatives had not executed compliance agreements, soliciting business for Alphatec, and converting NuVasive's business into business for Alphatec.

NuVasive alleged that Absolute Medical's breaches caused it "significant damages." *Id.* ¶ 79.

NuVasive moved to compel arbitration of the claim in Count II under the Agreement's binding arbitration clause. The district court granted the motion to compel arbitration of Count II and ordered that litigation on most of the remaining claims be stayed pending the arbitration.[4]

NuVasive moved for summary judgment in the arbitration proceeding. The arbitration panel concluded that Absolute Medical breached multiple sections of the Agreement by failing to have its sales representatives sign the required compliance agreements, failing to inform NuVasive that Alphatec was pursuing sales in the region, and failing to perform its marketing and sales obligations. The panel declined to grant summary judgment, however, because "NuVasive [was] still required to establish causation and damages in order to prevail" on the claim. Doc. 283-1 at 6.

NuVasive and Absolute Medical arbitrated the causation and damages elements of the claim before the panel via videoconference in December 2020. On March 4, 2021, the arbitration panel entered a Final Award denying NuVasive's breach of contract claim because NuVasive had failed to prove loss causation connecting Absolute Medical's conduct with NuVasive's claimed lost-profit damages. The panel's conclusion was based in part on its finding

---

[4] The stayed claims included Count III's claim for monetary damages, Count VI, VII, VIII, and IX.

that NuVasive's causation evidence did not adequately account for several surgeon customers' "variety of personal circumstances" that led them to switch from NuVasive's products to products sold by other vendors, including Alphatec. Doc. 283-2 at 11. Therefore, NuVasive's lost-profits damages model failed to capture accurately how the breaches affected its profits. The panel found that some of the surgeon customers—who had no contractual obligation to use any particular vendor—had used Alphatec products prior to Absolute Medical's breach of the Agreement; other surgeons continued to use NuVasive products after the breach; and still other surgeons said they stopped using NuVasive products due to a "variety of factors," *id*. at 10, including a transition to robotic surgery in one instance, and personal skepticism about NuVasive's business decisions, such as its removal of its Chief Executive Officer.

## D.    NuVasive's Motion to Vacate the Final Award

After the arbitration panel issued the Final Award, NuVasive and the defendants returned to district court to prepare the previously stayed claims for trial. The district court permitted a brief period of limited discovery on the remaining claims. During the discovery period, NuVasive served the defendants with requests for production of documents. Dissatisfied with the defendants' responses, NuVasive filed a motion to compel better responses. The district court granted the motion in part, ordering Soufleris and AMS to produce most of the documents NuVasive had requested, no later than August 26, 2021. Instead of producing the documents, the defendants moved for reconsideration of the order. The district court denied reconsideration.

Soufleris and AMS did not produce the documents until November 4, well after the court's August deadline had passed. Six days after the production, Absolute Medical and AMS moved to confirm the Final Award. In the motion to confirm the arbitration award, they informed the district court that they "expect[ed]" NuVasive to "argue for the first time that there was some level of misconduct during the underlying arbitration that did not come to the attention of the arbitration panel, and that this alleged misconduct provides a basis for challenging the Final Award." Doc. 333 at 7. Anticipating NuVasive's arguments, they told the district court that "it seem[ed] clear that what NuVasive intend[ed] [wa]s an attack upon the validity of the Final Award notwithstanding NuVasive's conscious decision not to timely register an objection to confirmation of the award." *Id.* They argued that the court should reject NuVasive's attempt to pursue vacatur because it was too late. On November 15, as predicted, NuVasive moved for leave to file a motion to vacate the Final Award based on the defendants' misconduct reflected in text messages the defendants had just produced. On November 17, the district court granted leave to file the motion.

In its motion to vacate the Final Award, filed on November 22, NuVasive argued that Absolute Medical "procured" the Final Award through "corruption, fraud or undue means," and thus the award should be vacated under § 10 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 10(a)(1). Recognizing that the FAA requires any party seeking to vacate an arbitration award under § 10 to file its motion within three months of the panel's award, *see* 9 U.S.C. § 12,

NuVasive's motion requested that the district court grant relief in two respects.

First, NuVasive asked the district court to equitably toll the three-month statutory filing deadline and consider its otherwise overdue motion. It argued that, even though this Court had not previously applied equitable tolling to the FAA, the district court should conclude that it was available and apply it in its case because of Soufleris's and AMS's misconduct.

Second, the motion argued that the Final Award should be vacated. NuVasive alleged that Soufleris had instructed sales representative Hawley "on how to answer questions NuVasive asked Hawley during the Arbitration as Hawley testified" remotely via videoconference. Doc. 353 at 2. NuVasive argued that it "did not know—and had no way of knowing—of Defendant's malfeasance in the Arbitration" until Soufleris and AMS provided the text message thread in their November production. *Id.* NuVasive explained that Soufleris was physically present in his counsel's Atlanta, Georgia office, at least for his own testimony by videoconference, on December 16, 2020. Hawley was physically present in Orlando, Florida when he testified later the same day. As a party to the arbitration proceeding, Soufleris was permitted to observe Hawley's video testimony, which he did from his counsel's office. But Soufleris was not merely observing the testimony, according to NuVasive. NuVasive maintained that by comparing the time stamps on the text messages the defendants produced in discovery with Hawley's arbitration testimony, it could demonstrate that Soufleris was

instructing Hawley in real-time on how to answer the questions posed to him by NuVasive's counsel. Hawley's testimony demonstrated "that he followed Soufleris' directions on how to answer these questions." *Id.* at 10. As an example, NuVasive's counsel questioned Hawley about compliance agreements he was required to sign pursuant to NuVasive's and Absolute Medical's 2017 Agreement and the companies' prior exclusive distribution agreements. NuVasive pointed out that Hawley answered "yes" when asked if "[he] signed numerous noncompetes with Absolute Medical." *Id.* at 5–6. After Hawley received a text message from Soufleris saying, "it was your corporate entity," *id.* at 5, he changed his testimony to say that he had signed the compliance agreements on behalf of his corporate entity, which was not a defendant in the lawsuit. *Id.* at 5–6.[5] NuVasive offered numerous other examples.

The defendants opposed the motion. They argued that NuVasive's motion to vacate the Final Award—filed on November 22—should be denied because it was filed more than three months after the Final Award was issued, outside of the time allowed by the FAA. *See* 9 U.S.C. § 12. Further, they asserted that

---

[5] Soufleris's text message stating "[i]t was your corporate entity" was sent at 6:24 p.m. Doc. 353 at 5. At 6:25 p.m., Hawley testified that he signed the compliance agreements not individually but on behalf of his company:

> Q:    In fact, you signed numerous noncompetes with Absolute Medical, correct?
> A:    Over the years, yes.
> Q:    Now, I want to go back - -
> A:    On behalf of Hawley Med.

*Id.* at 5–6.

equitable tolling was not available in the FAA context, so NuVasive could not seek leave to file its motion after the statutory deadline. In the defendants' view, although equitable tolling of a statute of limitations may sometimes be available, to apply it in this case would have contravened this Court's "strict" adherence to the FAA's provisions. Doc. 360 at 4. And with respect to NuVasive's allegations of misconduct, the defendants provided a declaration from Hawley in which he attested that he "was not aware that Mr. Soufleris was texting [him] during the course of [his] testimony and did not review or utilize the text messages from Mr. Soufleris prior to answering questions during the Arbitration." Doc. 360-3 at 4. It is undisputed that neither Soufleris nor Hawley disclosed—at any time—that Soufleris sent Hawley text messages at the time of his arbitration testimony.

The district court granted NuVasive's motion to vacate the Final Award. The court first considered whether NuVasive's motion was timely. It rejected the defendants' argument that equitable tolling is not available under FAA. While the district court observed that this Court had not yet addressed whether the FAA's time limitations may be equitably tolled, it adopted the Ninth Circuit's reasoning in *Move, Inc. v. Citigroup Global Markets*, 840 F.3d 1152 (9th Cir. 2016), and held that equitable tolling could be available when the circumstances warranted such an "extraordinary remedy." Doc. 371 at 10 (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). The district court then concluded that equitable tolling was appropriate in this case because NuVasive demonstrated that the defendants' conduct amounted to extraordinary

circumstances. Further, NuVasive "was diligently pursuing its rights at every step following issuance of the Final Award" because the text messages showing misconduct were not shared before the November 4 production, and as soon as it learned about them, it quickly took appropriate action. Doc. 371 at 12–13. Thus, the district court concluded that the application of equitable tolling was appropriate, and NuVasive's motion to vacate was timely because of that tolling.

Having concluded that the motion to vacate was timely, the district court considered the motion's merits. The district court relied on our three-part test to determine whether an arbitration award should be vacated due to fraud, articulated in *Bonar v. Dean Witter Reynolds*, 835 F.2d 1378 (11th Cir. 1988). The test requires that (1) "the movant must establish the fraud by clear and convincing evidence," (2) "the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration," and (3) "the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration." *Id.* at 1383.

The district court set out a detailed chronology comparing Soufleris's text messages to Hawley with Hawley's arbitration testimony. It granted the motion, concluding that the Final Award must be vacated. The district court reasoned that "all of Hawley's testimony directly align[ed] in time and subject-matter with the messages being sent by Soufleris, and Hawley's testimony [was] always consistent with Soufleris' messages." Doc. 371 at 15. Based on

the chronology, the district court concluded that NuVasive had satisfied the three-part test by demonstrating the defendants' fraud, showing that it could not have discovered the fraud before or during the November 4 production, and that Hawley's coached testimony was material to an issue before the arbitration panel. The district court's order also denied the defendants' request to remand the case to the arbitration panel for rehearing or a determination of how Hawley's messages affected the Final Award.

The defendants timely appealed the district court's order granting NuVasive's motion to vacate the Final Award.

## II.  STANDARD OF REVIEW

"[T]he question of whether equitable tolling applies is a legal one subject to *de novo* review." *Booth v. Carnival Corp.*, 522 F.3d 1148, 1149 (11th Cir. 2008) (internal quotation marks omitted). "[T]he application of that law to the particular facts is reviewed for abuse of discretion." *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008). "There is an abuse of discretion when a district judge bases his or her decision on factual findings that are clearly erroneous." *Id.*

"[O]rders vacating arbitration awards, like orders confirming them, are to be reviewed for clear error with respect to factual findings and *de novo* with respect to the district court's legal conclusions." *Gianelli Money Purchase Plan & Tr. v. ADM Inv'r. Servs., Inc.*, 146 F.3d 1309, 1311 (11th Cir. 1998).

### III. DISCUSSION

There are four issues on appeal. The first two concern the district court's application of equitable tolling to NuVasive's motion to vacate the Final Award. The latter two address the district court's decision to vacate the award.

First, the defendants argue that the district court erred when it concluded that the three-month deadline for seeking vacatur of the arbitration award may be equitably tolled. Second, they argue that even if the FAA's three-month deadline for moving to vacate an award may be equitably tolled in appropriate circumstances, the district court abused its discretion by tolling the deadline and finding NuVasive's motion timely in this case.

Third, the defendants maintain that the district court erred by granting the motion to vacate the arbitration award. Fourth, they argue that the district court abused its discretion when, after vacating the Final Award, the court denied their request to remand the case back to the arbitration panel. Below we address each issue in turn.

### A.   The District Court Did Not Err by Equitably Tolling the Three-Month Filing Deadline and Considering NuVasive's Motion as Timely.

The defendants first contend that, as a threshold matter, the district court committed legal error by ruling that the three-month window established by § 12 of the FAA for filing a motion to vacate is subject to equitable tolling. Noting that this Court has not previously held that the FAA's statutory time periods can be equitably

tolled, they argue that § 12 does not permit equitable tolling because the three-month window is not a statute of limitations but rather a "jurisdictional precondition to judicial review of [the] arbitration award." Appellants' Br. at 10.

> ### i.  A District Court May Equitably Toll the Three-Month Deadline in § 12 of the FAA.

The FAA authorizes a district court, "upon the application of any party to the arbitration," to vacate an arbitration award under a limited set of circumstances, including "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a). Section 12 requires that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Whether a district court may equitably toll § 12's three-month window is a question of first impression in this Circuit.[6]

---

[6] The closest we have come to answering the question was in *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851 (11th Cir. 1989). In that case, we affirmed the district court's denial of a motion to vacate an arbitration award, holding that the appellant's failure to move to vacate the award within three months of its issuance "bar[red] him from raising the alleged invalidity of the award." *Id*. at 854. But we did not reach the appellant's tolling argument—that the district court nonetheless should have considered his motion because of a "due-diligence" exception to § 12. *Id*. at 853. We did not decide whether such an exception existed because the appellant failed to demonstrate, as a factual matter, that he was prevented from filing a timely motion such that equitable tolling would have been appropriate. *Id*. at 854.

In the absence of clear authority from this Court, the district court adopted the reasoning of the Ninth Circuit's decision in *Move, Inc.* In *Move, Inc.*, the Ninth Circuit held that "the FAA is subject to the established doctrine of equitable tolling." *Id.* at 1158. The court relied on the Supreme Court's opinion in *Holland v. Florida*, 560 U.S. 631 (2010), which "instructed lower courts to consider several textual factors to determine whether Congress intended for tolling *not* to apply to a given statute." *Move, Inc.*, 840 F.3d at 1157. The *Holland* factors include whether the statute at issue:

> (1) set forth its time limitations in unusually emphatic form; (2) used highly detailed and technical language that, linguistically speaking, cannot easily be read as containing implicit exceptions; (3) reiterated its limitations several times in several different ways; (4) related to an underlying subject matter . . . with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery—a kind of tolling for which [the Court] found no direct precedent.

*Holland*, 560 U.S. at 646–47 (alterations adopted) (internal quotation marks omitted).

In *Move, Inc.*, the Ninth Circuit focused on the first three *Holland* factors. In applying these factors, the court addressed § 12's text and structure. It concluded that "the text of the statute does not preclude equitable tolling," reasoning that the FAA's instruction that notice of a motion to vacate "must be served" "is neither

'unusually generous' nor 'unusually emphatic'" and that "the FAA's limitations period is neither detailed nor technical and is not reiterated elsewhere in the statute." 840 F.3d at 1157.

The court next examined the argument that the FAA cannot accommodate equitable tolling of § 12's deadline for motions to vacate. *Id.* The argument went that because § 9 allows one year for a party to seek confirmation of an arbitration award, equitably tolling the deadline for a motion to vacate the same award could mean that district courts might be forced to consider motions to vacate filed after the court had already confirmed the award. The Ninth Circuit concluded that "the FAA's structure is not incompatible with equitable tolling," because a party seeking vacatur beyond the three-month deadline "would still need to meet the heavy burden of establishing its entitlement to equitable tolling for a court to vacate an award." *Id*. Given the heavy burden, the court observed, "it would only be the rare case in which the three-month deadline . . . would not apply." *Id*.

Finally, the Ninth Circuit concluded that "[w]hile the FAA reflects the national policy favoring arbitration with just the limited review necessary to maintain finality in arbitral proceedings . . . . § 10's limited grounds for review were still designed to preserve due process." *Id*. at 1157–58 (internal quotation marks omitted). "[B]alancing the needs for both finality and due process, the arbitral process will not be disrupted if parties are permitted to satisfy the high bar of equitable tolling in limited circumstances." *Id*. at 1158.

The defendants here make many of the same arguments that the Ninth Circuit rejected in *Move, Inc.*[7] We find the Ninth Circuit's reasoning thorough and persuasive. We therefore agree with our sister circuit that the availability of equitable tolling does not contravene the FAA's text, structure, or purpose.

Besides the arguments the Ninth Circuit rejected in *Move, Inc.*, the defendants maintain that the three-month window in § 12 is a "jurisdictional precondition to judicial review of [the] arbitration award" and not merely a statute of limitations eligible for tolling if a party can demonstrate it is appropriate. We disagree.

Recently, in *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493 (2022), the Supreme Court offered relevant guidance about how to determine whether a statute's deadlines are jurisdictional, such that a court or agency would be precluded from reviewing late filings. In *Boechler*, the Internal Revenue Service ("IRS") levied upon a law firm's property to collect a debt for unpaid tax liabilities. After losing its challenge to the seizure in a

---

[7] One such argument is that if tolling were permitted, the FAA's one-year timeline to seek confirmation of an arbitration award would conflict with its three-month timeline to seek vacatur of the same award. *See* Appellants' Br. at 7–10. We note that under our precedent the purported conflict could exist even in the absence of tolling because a party seeking to confirm an arbitration award may seek confirmation as soon as the award is rendered. It need not wait until the time for filing a motion to vacate has expired. *See McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1240–41 (11th Cir. 2021) ("Nothing in the statute prevents a party from moving for confirmation of an award within three months of that award or mandates that a district court wait to rule on such a motion because another party may file a motion to vacate.").

"collection due process" hearing before the IRS's office of appeals, the law firm had 30 days to petition for review of the result. *Id.* at 1496–97. When it filed the petition one day late, the Tax Court dismissed the appeal for lack of jurisdiction, and the Eighth Circuit affirmed. *Id.* at 1497.

The statutory provision in question says that a person seeking review of a negative result in a collection due process hearing "may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)." 26 U.S.C. § 6330(d)(1). In the Supreme Court, the IRS Commissioner argued that the 30-day period for a taxpayer to file her petition for review is a jurisdictional requirement and therefore cannot be equitably tolled. *Boechler*, 142 S. Ct. at 1496. The Commissioner based this argument on the provision's parenthetical language.

The Supreme Court first observed that the distinction between procedural and jurisdictional requirements "matters" because the consequences can be severe. *Id.* at 1497. Whereas the former "promote the orderly progress of litigation but do not bear on a court's power," the latter "mark the bounds of a court's adjudicatory authority" and "cannot be waived, or forfeited, must be raised by courts *sua sponte*, and . . . do not allow for equitable exceptions." *Id.* (internal quotation marks omitted).

The Court rejected the Commissioner's interpretation. It declared that "a procedural requirement" is "jurisdictional only if Congress clearly states that it is." *Id.* (internal quotation marks

omitted). Although "Congress need not incant magic words, . . . the traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.* (internal quotation marks omitted).

The Court addressed the Commissioner's argument based on the parenthetical language that "the Tax Court shall have jurisdiction with respect to such matter." 26 U.S.C. § 6330(d)(1). It reasoned that the Commissioner's view was plausible—the parenthetical could be read to condition the Tax Court's jurisdiction on a timely filing. But, the Court reasoned, "the text does not clearly mandate the jurisdictional reading," and "[w]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." *Boechler*, 142 S. Ct. at 1498. It explained that nothing else in the text or structure of the provision or the statute, read as a whole, compelled a jurisdictional interpretation. *Id.* at 1498–99. Relying on its textual analysis, the Court held that the 30-day time limit was an "ordinary, non-jurisdictional deadline subject to equitable tolling." *Id.* at 1501.

Unlike the filing deadline in *Boechler*, the three-month limitation in § 12 makes no reference to jurisdiction. It merely instructs that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Thus, the argument that the time limit in § 12 is jurisdictional is even weaker than the argument the Court rejected in *Boechler*. The

language "must be served" does not communicate the sort of "jurisdictional clarity" that *Boechler* requires. *Boechler*, 142 S. Ct. at 1498. We reject the defendants' argument.

We hold that the three-month window in § 12 may be equitably tolled in the appropriate circumstances. To be clear, we hold only that equitable tolling is *available* in the FAA context. Litigants still must demonstrate that their cases present circumstances warranting this extraordinary remedy. Below we consider whether NuVasive has presented such circumstances.

> ii.  *The District Court Did Not Err by Equitably Tolling § 12's Statutory Deadline and Considering NuVasive's Motion to Vacate the Final Award.*

The defendants next argue that even if equitable tolling is available in the FAA context, the district court erred in concluding the three-month filing deadline should be tolled in this case. They contend that Soufleris's conduct did not qualify as extraordinary circumstances and that NuVasive was insufficiently diligent in pursuing its rights to warrant tolling of the deadline for filing its motion to vacate the arbitration award.

"Equitable tolling is an extraordinary remedy which is typically applied sparingly." *Brown*, 512 F.3d at 1307 (internal quotation marks omitted). It is "appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." *Arce v. Garcia*, 434 F.3d 1254, 1260 (11th Cir. 2006) (internal quotation marks omitted). In

22-10214                Opinion of the Court                    25

this context, due diligence is "reasonable diligence." *Holland*, 560 U.S. at 653 (internal quotation marks omitted).

The district court concluded that NuVasive satisfied both the "extraordinary circumstances" and "diligence" prongs of the equitable-tolling test. Doc. 371 at 13. It found that Soufleris's messages to Hawley during Hawley's arbitration testimony, along with the defendants' efforts to conceal the messages by defying discovery requests and orders, presented extraordinary circumstances. We address each prong of the analysis.

First, extraordinary circumstances. As we described above, the evidence NuVasive presented to support its motion revealed shocking conduct by Soufleris and Hawley at the arbitration proceeding. Before Hawley began his arbitration testimony, he took an oath affirming that there was no one in the room with him and no one communicating with him. Although the former was true, the latter was not. While Hawley testified, he received text messages from Soufleris concerning the content of Hawley's testimony. When this conduct was discovered, Hawley submitted a declaration denying that he had read the messages while testifying. But by comparing Soufleris's messages and their timing with Hawley's testimony, NuVasive showed, and the district court found, that Hawley's testimony was consistent with Soufleris's contemporaneous text messages. In at least one instance, Hawley revised his answers to comport with Soufleris's suggestions. Further, having observed the defendants' conduct in discovery, the district court found that it was "clear that Defendants were intentionally

attempting to run out the clock on Plaintiff's time to file a motion to vacate by failing to produce the documents that could show misconduct during the arbitration." Doc. 371 at 13. We cannot say that these factual findings are clearly erroneous. And we agree with the district court that the conduct and the cover-up together constitute the sort of "extraordinary circumstances" contemplated by the doctrine of equitable tolling. *Id.* The district court did not err in concluding NuVasive satisfied this prong.

Turning to the due diligence prong, the district court found that NuVasive could not have known about the text messages between Soufleris and Hawley until after the defendants produced the documents NuVasive requested. Once the text messages were produced, the court found, based on the "sequence of events," that NuVasive acted diligently by requesting permission from the court to file a motion to vacate the Final Award mere days later. *Id.* at 12. The record provides ample support for the district court's findings that NuVasive acted quickly once it learned about the text messages. We thus agree with the district court's conclusion that "Plaintiff was diligently pursuing its rights." *Id.*

On appeal, the defendants contend that "a diligent lawyer for NuVasive would certainly have looked for [fraud] during the available 90-day window . . . [;] for example, [the lawyer] would have immediately pursued discovery concerning the arbitration panel, the witnesses, their text messages and the whole record—looking for any proof of misconduct not detected in the arbitration proceeding itself." Appellants' Br. at 18. This argument—which

attempts to blame NuVasive for failing to investigate fraud when there was no reason to suspect fraud—hardly warrants comment. The district court found that any purported delay or lack of diligence by NuVasive was due entirely to defendants' misconduct and that the defendants "actively subvert[ed] discovery requests and a Court Order by failing to timely produce the requested communications." Doc. 371 at 12. Had the defendants timely performed their discovery obligations, the production that included the Soufleris-Hawley text messages would have been in NuVasive's counsel's hands more than four months earlier.[8] Once NuVasive learned of the text messages, it promptly moved for leave to file a motion to vacate within a few days. And after the district court granted leave, NuVasive filed its motion to vacate less than a week later.

Nor are we persuaded by the defendants' argument that their delayed responses were irrelevant to the diligence inquiry. They say that, even if they had produced the documents by the ordered date, NuVasive's motion to vacate still would have been too late because the "responses were not due until twenty-three

---

[8] The original deadline for producing documents was June 30, 2021. When the defendants' document production was lacking, NuVasive sought the district court's assistance by filing a motion to compel, and the district court ordered that Soufleris and AMS produce the documents. The district court's deadline for production was August 26, 2021, but Soufleris and AMS did not produce the documents until November 4, in violation of the order compelling production.

days after the 90-day period expired on June 2, 2021."[9] Appellants' Br. at 18. But, again, in the absence of any indication that fraud or misconduct had occurred, it would not have been reasonable to expect NuVasive to try to discover any. On this record, it is audacious indeed for the defendants to suggest that had NuVasive sought "evidence of fraud in the arbitration," *id.*, they would simply have offered it up. In any event, the district court properly tolled the filing deadline on the motion to vacate, so the defendants' argument fails.

Based on our review of the record, the district court's findings of fact were not clearly erroneous, and they supported the district court's conclusion that NuVasive satisfied both prongs of the equitable tolling analysis. The defendants' conduct presented extraordinary circumstances, and NuVasive was diligent once it learned that there was reason to pursue vacatur. The district court did not err in concluding that the deadline to move for vacatur

---

[9] Although it is ultimately immaterial, we note that the defendants erred in calculating when the statutory deadline expired because they counted 90 days, rather than three months, as the statute says. *See* 9 U.S.C. § 12. The arbitration panel issued the Final Award on March 4, 2021. Three months from that date expired on June 4, not June 2 as the defendants say.

We acknowledge that even had the defendants complied with the June 30 deadline, any motion to vacate based on produced documents would have been filed outside of the three-month window. But that fact is irrelevant to the question whether NuVasive was diligent for equitable tolling purposes. NuVasive acted diligently as soon as it became aware there was a reason to contest the Final Award.

should be equitably tolled such that NuVasive's motion was timely.

**B.    The District Court Did Not Err by Vacating the Final Award**

The defendants urge that even if the district court did not err in tolling the three-month window and thus was permitted to consider NuVasive's motion to vacate the Final Award under 9 U.S.C. § 10(a), the court abused its discretion by granting the motion and vacating the award. They argue that the district court erred in determining that NuVasive proved fraud by clear and convincing evidence and that the fraud was not materially related to an issue in the arbitration.

A district court "may," in its discretion, vacate an arbitration award "upon the application of any party to the arbitration" if "the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). This Court uses "a three part test to determine whether an arbitration award should be vacated for fraud." *Bonar*, 835 F.2d at 1383. First, the moving party "must establish the fraud by clear and convincing evidence"; second, "the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration"; and third, "the person seeking to vacate the award must demonstrate that the fraud materially related to an issue in the arbitration." *Id.*[10]

---

[10] In their briefing, the defendants conflate the distinct issues of whether the district court erred by applying equitable tolling and by vacating the Final

In its order granting the motion to vacate the Final Award, the district court concluded that all three prongs were satisfied. To support its conclusion on the first prong, that NuVasive established fraud by clear and convincing evidence, the district court pointed to its timeline comparing Soufleris's messages to Hawley during Hawley's arbitration testimony with Hawley's contemporaneous testimony. Based on its side-by-side comparison of the text messages and Hawley's contemporaneous testimony, the district court found that "three specific instances during Hawley's testimony that establishe[d] by clear and convincing evidence that his testimony was indeed being guided by Soufleris's messages." Doc. 371 at 15. In each instance, Hawley appeared to change his answer after Soufleris directed him to not implicate Absolute Medical. These instances included testimony about: whether Hawley had signed compliance agreements that the Agreement required, whether Hawley's compliance agreements had been sent to or withheld from NuVasive, and whether Hawley had provided a NuVasive device to Alphatec. Based on these factual findings, the district court concluded that "the complete alignment of all of Hawley's testimony with Soufleris's messages" compelled the conclusion that NuVasive "establishe[d] by clear and convincing evidence that Hawley was reading Soufleris's messages in real-time while

---

Award. As a result, the defendants do not directly contest the district court's findings on the second prong of the vacatur-for-fraud test. Instead, their brief discusses diligence only in the context of equitable tolling. *See* Appellants' Br. at 18. For clarity, we discuss these issues separately.

Hawley was testifying and conforming his testimony to Soufleris's messages." Doc. 371 at 17.

The defendants respond with Hawley's declaration, filed after the text messages came to light, that he did not see the text messages during his testimony. But the district court was free to disbelieve Hawley's declaration in the face of contrary evidence that he conformed his answers to Soufleris's instructions in the messages in real-time. The defendants have pointed us to nothing in the record showing that the district court's factual findings on the first prong were clearly erroneous. The district court did not err by determining that NuVasive established the defendants' fraud by clear and convincing evidence.

On the second prong, the district court concluded that NuVasive "could not have discovered prior to arbitration that Soufleris was planning to improperly direct Hawley's testimony" and that "it also could not have discovered the fraud while it was ongoing because Hawley's testimony was occurring via video feed." *Id.* at 18. As the district court observed, the arbitration was conducted from remote locations over videoconference—Hawley, Soufleris, and NuVasive's counsel were all in different states while Hawley testified. The defendants do not explain how NuVasive could have discovered the coaching remotely.[11] They point to the facts that

_____

[11] And given that, before testifying, Hawley took an oath affirming that there was no one in the room with him and no one was communicating with him, it was reasonable for NuVasive to believe, in reliance on this oath, that no one was coaching him.

"Hawley was visible to all viewers as he testified via his laptop computer" and "[t]here is no suggestion in the record that anyone, including the three arbitrators and [NuVasive's] team of attorneys, noticed any suspected coaching behaviors." Appellants' Br. at 21. But that is precisely the point: there was no noticeable behavior. It was only once the text messages were produced that they could be compared to Hawley's testimony. The district court's factual findings as to the second *Bonar* prong were not clearly erroneous.

Finally, the district court determined that NuVasive's motion satisfied the third *Bonar* prong because Soufleris's messages and Hawley's arbitration testimony were materially related to an issue in the arbitration. The district court determined that Hawley's testimony "related directly" to issues that the court had ordered the parties to resolve through arbitration, including (1) whether the sales representatives working for Absolute Medical had executed the compliance agreements required by the Agreement; (2) whether the defendants violated the compliance agreements; and (3) whether Absolute Medical took any action to enforce the compliance agreements. Doc. 371 at 19. As a factual matter, the district court did not err: Soufleris's text messages instructing Hawley on how to answer the questions addressed each of these areas.

The defendants do not dispute this fact. Instead, they argue that the fraud Soufleris and Hawley perpetrated was not material because the arbitration panel's decision not to award lost profits damages in the Final Award was based on a failure of proof as to

loss causation and the amount of damages, not the subject matter of Hawley's testimony. Therefore, they say, even if the text messages influenced Hawley's testimony, the testimony had no impact on the arbitration panel's decision.

Our precedent dooms this argument. In *Bonar* we said that the materiality element "does not require the movant to establish that the result of the proceedings would have been different had the fraud not occurred." 835 F.2d at 1383. Thus, NuVasive need not prove that it would have succeeded in proving causation and damages absent the unlawful coaching, nor was it required to prove that the subject matter on which Hawley was coached concerned causation and damages specifically. Rather, the test is whether the fraud was "materially related to an issue in the arbitration." *Id.* We reject the defendants' attempt to define "issue in the arbitration" more narrowly than our precedent allows. To permit a party who committed fraud to render its fraud immaterial in this way would undermine the purpose of vacatur for fraud under § 10(a)(1).

The issues the district court identified as impacted by Hawley's corrupted testimony all were "issue[s] in the arbitration." Indeed, whether the defendants breached the Agreement as it pertained to the compliance agreements was the *primary* liability issue in the arbitration. The district court correctly concluded that the fraud was materially related to that issue. Thus, the district court did not err in vacating the Final Award under § 10(a).

34                    Opinion of the Court                    22-10214

**C.    The District Court Did Not Abuse its Discretion by Declining to Direct a Rehearing by the Arbitration Panel**

The final issue the defendants raise on appeal is whether, after vacating the Final Award, the district court abused its discretion by failing to direct a rehearing by the arbitration panel, either to determine whether any fraud took place or for a rehearing of the arbitrated claims. The defendants argue that the district court's decision not to send the arbitrated claim back to the arbitration panel was improperly based on a desire to punish them. They further argue that the district court should not have considered prejudice to NuVasive in deciding whether to send the claim back because NuVasive voluntarily entered into the dispute resolution agreement. Therefore, they say, it could not claim prejudice from being forced to arbitrate. NuVasive responds that this issue was not properly noticed on appeal and that, even if it was, the district court did not abuse its discretion.

The FAA provides that "[i]f an award is vacated . . . the court *may, in its discretion*, direct a rehearing by the arbitrators." 9 U.S.C. § 10(b) (emphasis added). We agree with the district court that the FAA granted it "complete discretion about how to proceed" with the case after the Final Award was vacated. Doc. 371 at 20. Tellingly, the defendants cite no authority to the contrary.[12] And the

---

[12] The defendants rely on *Bonar* in arguing that remand is the normal course following the vacatur of an arbitration award. In *Bonar*, the fraud at issue involved a retained expert witness who lied about his education credentials, not

district court did not abuse the discretion the FAA afforded it. The court carefully considered how to proceed upon vacating the arbitration award, taking into account the facts leading to the vacatur; the defendants' past misconduct throughout the litigation, including intentional destruction of "vast amounts of evidence," Doc. 371 at 21, by defendants and their counsel which led to spoliation sanctions; and finally, the unlikelihood that a remand to the arbitration panel could cure the harm from the defendants' misconduct. We also reject the defendants' prejudice argument; we are unconvinced that NuVasive's voluntary participation in the Agreement's dispute resolution clause required the district court to compel re-arbitration. NuVasive's objection was not to arbitration generally, but to re-arbitration after the defendant's brazen, serious misconduct. We therefore cannot say that the court abused its discretion when it decided to retain control over the entire case after vacating the Final Award.[13]

---

two of the parties themselves. *See* 835 F.2d at 1383–84 (reversing an arbitration panel's award of punitive damages and remanding to a new arbitration panel following the discovery of a retained expert witness's false testimony). What is more, *Bonar* did not hold that a district court *must* remand to an arbitration panel following vacatur.

[13] Because we conclude that the district court did not abuse its discretion, we need not address NuVasive's argument that the defendants failed to raise this issue properly on appeal.

## IV.    CONCLUSION

For the reasons discussed above, we affirm the district court's order.

**AFFIRMED.**